UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 5:26-cr-00088-01 |
| v. | DISTRICT JUDGE DOUGHTY |
| JUSTIN CHADWICK BUTLER | MAGISTRATE JUDGE HORNSBY |
| Defendant | |

______________________________________/

**UNITED STATES' MOTION IN LIMINE**
**TO ADMIT EVIDENCE AS INTRINSIC OR, IN THE ALTERNATIVE,**
**NOTICE OF INTENT TO OFFER EVIDENCE PURSUANT TO FED. R. EVID 404(b)**

NOW INTO COURT, comes the United States of America, through the United States Attorney and undersigned Assistant United States Attorneys, who hereby files this Motion in Limine seeking to admit certain evidence as intrinsic to the charged offenses. In the alternative, should the Court determine the evidence is extrinsic, the United States provides this written notice of its intent to introduce extrinsic evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.

PROCEDURAL HISTORY

On March 4, 2026, a Grand Jury returned a three-count indictment charging BUTLER as follows:

- Count 1: Cyberstalking, in violation of Title 18, United States Code, Sections 2261A; wherein the allegations are that BUTLER used the internet and other electronic communication to engage in a course of conduct, with the intent to harass and intimidate M.J.; with such conduct reasonably expected to cause substantial emotional distress to M.J. or an immediate family member.
- Count 2: Threats Against a Successor to the Presidency, in violation of 18 United States

Code, Section 871(a); alleging that on February 3, 2026, BUTLER, knowingly and willfully made a threat, through social media, to take the life of and to inflict bodily harm upon the Speaker of the House of Representatives, M.J. (an officer next in the order of succession to the office of the President). The posting cited was the one referenced above: February 3, 2026, "[M.J.] couldn't lie so smoothly with bullet holes in his face…".

- Count 3: Threats Against the President and a Successor to the Presidency, in violation of 18 United States Code, Section 871(a), alleging that on February 4, 2026, BUTLER, knowingly and willfully made a threat, through social media, to take the life of and to inflict bodily harm upon the President, D.J.T., and the Speaker of the House of Representatives, M.J. (an officer next in the order of succession to the office of the President). The posting cited was the one referenced above: February 4, 2026, "[a] real patriot would kill some of these traitors that have made this possible. [D.J.T.] and [M.J.] top of the list who I want to see tried and hanged for treason. What about ya'll? Also, assassinate Netanyahu while we drop these two traitors." [Rec. Doc. 17].

A jury trial is set on November 16, 2026. [Rec. Doc. 30].

## RELEVANT FACTUAL BACKGROUND

In approximately February 2025, Justin Chadwick Butler ("BUTLER") began making social media posts of a political nature, primarily on Facebook, but also on TikTok and YouTube. Over the next year, through approximately February 2026, he made increasingly violent posts, and videos, targeting M.J., Speaker of the United States House of Representatives("M.J.") and D.J.T., President of the United States("D.J.T."). In his posts, BUTLER expressed extreme frustration and disdain for (M.J., Speaker of the United States House of Representatives("M.J."), D.J.T., President of the United States("D.J.T."), and Benjamin Nentanyahu, Prime Minister of Israel

("Nentanyahu"). These posts seemed to progress in their vitriolic nature over time, labeling M.J., D.J.T, and Nentanyahu with derogatory names, such as "traitor," "racist white trash," and "pedo[phile] and sex trafficking hiders."

Most concerning was BUTLER's repeated stated desire for killing M.J., D.J.T., and Nentanyahu, and a desire to see them dead. A few examples of Butler's posts include:

- July 6, 2025, "…I, judge of nothing, sentence them (M.J. and members of the administration) to death"…;
- September 9, 2025,"Death to Speaker [M.J] and death to all traitors to our country. @ President [D.J.T.]";
- December 20, 2025, "I really hope to see… Traitor [M.J.] with a patriotic bullet through his lying face soon.";
- December 25, 2025, "Sure hope someone kills [D.J.T.] and [M.J.] this Christmas…"
- January 6, 2026, "Speaker [M.J.] is a traitor. Death to traitors";
- February 3, 2026, "[M.J.] couldn't lie so smoothly with bullet holes in his face…"
- February 4, 2026, "[a] real patriot would kill some of these traitors that have made this possible. [D.J.T.] and [M.J.] top of the list who I want to see tried and hanged for treason. What about ya'll? Also, assassinate Netanyahu while we drop these two traitors."

Throughout BUTLER'S posts on Facebook, he often "tagged" or "mentioned" M.J. or D.J.T in the posts. "Mentioning" is used in the text of a post and is accomplished by typing "@" followed by the profile name, and then selecting the correct name from the list.[1] "Tagging" is a similar concept used to associate people through their profiles with contacts in a post or a picture,

[1] *How do I mention people, Pages, or groups in a post or comment on Facebook?*, 10/27/2026, https://www.facebook.com/help/218027134882349/?helpref=uf_share&_rdr.

and is done through a "tag" button instead of typing in the text of the post[2]. When someone "tags" or "mentions" another person in a post, the tagged person receives a notification that he/she has been tagged, and it creates a link to his/her profile that anyone seeing the post can click. The link presents as the tagged profile name in blue letters. Clicking on the profile name (link) will reroute the user to the tagged profile's timeline. The post may also be visible to the audience of the tagged profile, depending on their privacy settings.

In 2025 to 2026, BUTLER "tagged" or "mentioned" M.J. approximately twenty times in his own Facebook posts, and "tagged" or "mentioned" D.J.T. approximately three times. BUTLER also "commented" on numerous posts that were posted by M.J.'s congressional profile account: Speaker Mike Johnson (https://facebook.com/SpeakerJohnson).

In addition to the dozens of Facebook posts and comments made during this period, BUTLER recorded several videos and posted them on TikTok concerning the same subject matter. On July 28, 2025, BUTLER sent a direct message to M.J. via his congressional Facebook profile, in part asking, "When and w[h]ere can I expect [M.J.] to explain himself since he is my direct representative?"[3] Butler also emailed M.J. at his congressional email address at least two times, including on August 27, 2025, which stated in part:

> …Get your shit together before the people get it together for you, fucking scum. You know what you do and what you stand for and who you take advantage of and I'm not gonna pretend you don't. TARRED AND FEATHERED, indeed.

[2] Facebook Help Center, *What is tagging on Facebook and how does it work?*, 10/27/2006, https://www.facebook.com/help/124970597582337/?helpref=uf_share&_rdr.

[33] Direct messages may be sent on Facebook through "Messenger". "Messenger" is Facebook's official instant messaging application and platform. Messenger messages are not posted to a profile's private or public pages.

## THE EVIDENCE

The United States submits the proposed evidence as attachments for the Court's review. Attachment A is a descriptive list of videos posted on Tik Tok and You Tube. Attachment B is a selection of Butler's Facebook posts on his own profile page. Attachment C is the direct message sent via Messenger to the Speaker's Facebook profile and two e-mail communications sent to the Speaker's congressional e-mail address.

## LAW AND ANALYSIS

Relevant evidence is generally admissible. Fed. R. Evid. 402. The broad authorization for the admission of facts to the jury is only limited by certain defined exceptions and the definition of relevancy itself. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

Rule 403 limits the use of otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Unfair prejudice means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. Fed. R. Evid. 403, Advisory Committee Notes.

"Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Pace*, 10 F. 3d 1106, 1115 (5th Cir. 1993). The Fifth Circuit has previously explained that:

> the discretionary policy against undue prejudice would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.

*United States v. Beechum*, 582 F. 2d 898, 915, fn 20 (5th Cir. 1978) (*en banc)* (internal citations omitted). Therefore, "…exclusion under Rule 403 is an extraordinary remedy that reviewing courts employ cautiously and sparingly -only when there has been a clear abuse of discretion." *United States v. Gurrola*, 898 F. 3d 524, 538 (5th Cir. 2018) (internal citations omitted) (emphasis added).

Intrinsic evidence is generally admissible to allow the jury to "evaluate all the circumstances under which the defendant acted." *United States v. Sudeen*, 434 F. 3d 384, 388-389 (5th Cir. 2005), citing *United States v. Navarro*, 169 F. 3d 228, 233 (5th Cir. 1999). Intrinsic evidence is evidence that is "inexorably intertwined" with evidence used to prove the crime charged. *Sudeen* at 388-389; *see also United States v. Williams*, 900 F. 2d 823, 825 (5th Cir. 1990) (evidence qualifies as intrinsic when "the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.") (internal quotations and citations omitted). Such evidence is admissible to complete the story of crime by providing immediate context of events in time and place. *United States v. Coleman*, 78 F. 3d 154, 156 (5th Cir. 1996); *see also, United States v. Navarro*, 169 F. 3d 228, 233 (5th Cir. 1999) (intrinsic evidence is generally admissible to allow the jury to "evaluate all the circumstances under which the defendant acted").

In determining whether this conduct is inextricably intertwined or constitutes part of a single criminal episode, the Court should look to factors such as the evidence's contemporaneity to the charged conduct, the similarity and relatedness of the proposed evidence to the charged conduct, the propensity of the evidence to put the charged conduct into context, and the usefulness of the evidence to the government in proving the elements of the offenses. *See generally United States v. Coleman,* 78 F. 3d. 154 (5th Cir. 1996).

Where evidence is intrinsic, it qualifies without reference to Rule 404(b), which states generally that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Sudeen* at 389. Because intrinsic evidence is beyond the scope of Rule 404(b), the government is not legally obligated to give the defense notice of intent to introduce such evidence. *United States v. Penn*, 161 F. 3d 7, 1 (5th Cir. 1998) (per curiam).

**A. Evidence of BUTLER's social media posts and activity is "inextricably intertwined" with the evidence used to prove the crimes charged and therefore, admissible as intrinsic evidence.**

The social media posts and videos published by BUTLER during 2025-2026 should be admissible as intrinsic evidence because they are relevant to the charged counts and are inextricably intertwined with the charged conduct. Count 1 charges the offense of cyberstalking. One of the elements of cyberstalking requires the defendant to have "engaged in a course of conduct that. "… caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person…". *Fifth Circuit Pattern Jury Instructions* (2024) § 2.86D. "Course of conduct" is defined in that section as "…a pattern of conduct composed of two or more acts, evidencing a continuity of purpose." *Id*. See also 18 U.S.C. § 2266(2). Therefore, the pattern of conduct throughout this period is relevant and probative to the elements of Count 1. Butler's posts illustrate a pattern and are indicative of his intent to harass and intimidate. The posts are also probative to the effects that BUTLER'S continued course of conduct had on M.J. and his immediate family, and whether, as a result, they would reasonably be expected to suffer substantial emotional distress.

The social media activity of BUTLER during this time period is also relevant and inextricably intertwined with the conduct charged in Counts 2 and 3. While these counts refer to a single post each, Butler's series of social media posts in 2025-2026 demonstrate a continuous

and escalating course of conduct that progresses over that period. The posts refer to similar political topics, such as M.J., D.J.T. and Nentanyahu, and BUTLER's desire for their demise. Butler's social media activity demonstrates a pattern of related, increasing hostile posts, specifically targeting M.J. and D.J.T. While individual posts are charged in Counts 2 and 3, the cumulative and progressive nature of Butler's posts provides context to his intent and meaning to the charged posts. The subject matter of the different posts is similar and they are often interrelated, in that BUTLER uses the same, or similar, terminology that likely will be at issue as to what he intended by the language he used. Whether a particular statement qualifies as a threat is dependent upon the context in which it is communicated, including how often it is communicated. BUTLER's social media activity over time, especially after being contacted by law enforcement concerning his comments, is probative of his understanding of the statements he made and how he intended them to be perceived. Other factors that favor this conduct being designated as intrinsic is its contemporaneity to the charged conduct, and the similarity and relatedness of BUTLER's posts and communications to the charged statements. Most importantly, BUTLER's additional posts in 2025-2026 are necessary to put the charged conduct in context to complete the story of the crime.

**B. If the evidence is not intrinsic, it is admissible under Rule 404(b).**

Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character. Fed. R. Evid. 404(a). The evidence may be admissible for another purpose, however, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). Butler denies an essential element of Counts 1-3: intent to commit the charged conduct, therefore evidence to prove intent, knowledge as well as absence of mistake or lack of accident is admissible.

The Court should admit evidence concerning the other acts as evidence under 404(b). In *Beechum*, the Fifth Circuit emphasized that the trial court must engage in a two-step process of evaluating the admissibility of such other crimes evidence: (1) the extrinsic evidence must be relevant to an issue other than the defendant's character, and (2) the evidence must possess probative value that outweighs any danger of any unfair prejudice, confusion, misleading the jury, or needless presentation of cumulative evidence. *Id* at 911. Where the extrinsic evidence addresses intent, the Fifth Circuit in *Beechum* made it clear that the relevancy "derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." 582 F.2d at 911. In *United States v. Scott*, 48 F.3d 1389, 1396 (5th Cir. 1995) (internal quotations omitted), the Fifth Circuit further explained that "[t]he relevancy of the evidence must be assessed by comparing the state of mind required for the past and present offenses." Such evidence "lessens the likelihood that the defendant committed the charged offense with innocent intent." *Beechum* at 913.

The extrinsic offense need merely be of such a nature that its commission involve the same knowledge required for the offense charged." *United States v. Beechum*, 582 F.2d at 912 n.15. Where both the offense charged and the extrinsic offense bear on the same state of mind, intent, or mode of operation, the relevancy prong of the two-prong Beechum test is satisfied. See, e.g., *United States v. Dunbar*, 614 F.2d 39 (5th Cir. 1980).

BUTLER's online social media posts during 2025-2026 is a series of related events that provides insight into his state of mind, his intent, and his motivation, which clearly will be an issue especially since BUTLER's intent is an element of all three counts: (1) in Count 1 that he had the intent to harass and intimidate; and (2) in Counts 2 and 3 that he understood and meant the words he wrote to be threats. The proposed evidence, including subject matter and particular terminology used, could also be used to establish identity of the person making the different social media posts,

if that became a defense. Finally, the social media evidence in its entirety could be used to show that the meaning of the statements made by the BUTLER is clear and there is no mistake, or accident, in interpreting the statements as threats.

CONCLUSION

The United States respectfully requests that the Court find the proposed evidence, including **BUTLER's** social media posts, online posted videos, comments on social media, as well as emails to M.J. during 2025-2026, are admissible at trial as intrinsic evidence or, in the alternative, admissible to prove intent, knowledge, absence of mistake, and lack of accident under Rule 404(b).

Respectfully submitted,

ZACHARY KELLER
United States Attorney

*/s/ Allison L. Duncan*
ALLISON L. DUNCAN, La Bar No. 27443
Assistant United States Attorney

JAMES S. SEAMAN, La. Bar No. 25496
Assistant United States Attorney

300 Fannin Street, Suite
3201
Shreveport, Louisiana 71101
Phone: 318-676-3600